IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 27, 2013 Session

IN RE:  JAIDEN C.W. and CAIDEN J.W.

Direct Appeal from the Juvenile Court for Coffee County
No. 07J-1623      Timothy R. Brock, Judge

No. M2012-01188-COA-R3-JV - Filed April 11, 2013

This is the second appeal of this case, involving the issue of child support and arrears.  In *In re Jaiden C.W.*, No. M2010-01105-COA-R3-JV, 2011 WL 2306057 (Tenn. Ct. App. June 7, 2011), this Court vacated the trial court's determination of Appellant Father's child support obligation because the trial court did not base its determination on Father's actual income.  Upon remand, the trial court interpreted the law of the case to limit its review only to Father's income, and to negate any consideration of other variables affecting child support.  Because the trial court misinterpreted the law of the case to limit its review of the parties' actual circumstances, we vacate the order on child support and remand for reconsideration.  Vacated and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Greg W., Manchester, Tennessee, Pro Se.

Eric J. Burch, Manchester, Tennessee, for the appellee, Jessica J.

**OPINION**

A full recitation of the relevant facts is set out in this Court's previous opinion, *In re Jaiden C.W.*, No. M2010-01105-COA-R3-JV, 2011 WL 2306057 (Tenn. Ct. App. June 7, 2011) ("*Jaiden I*").  Appellee Jessica J. ("Mother") and Appellant Greg W. ("Father") are the unmarried parents of two minor children, Jaiden C.W. and Caiden J.W., who were born

in 2006.[1] While the parties were together, Father provided Mother $400 per month in child support. *Jaiden I*, 2011 WL 2306057, at *1. However, the parties' relationship ended in October 2007, after which time Father ceased payment of child support. *Id*. In November 2007, Father filed a petition to establish paternity of the children and for designation of primary residential parent. *Id*. Mother counter-petitioned for child support. *Id*.

On August 18, 2008, the trial court entered an order, providing that Father's "child support obligation shall be set at $329.00 per week." As discussed in *Jaiden I*, the August 18, 2008 order was an "order of temporary child support . . . setting Father's child support obligation at $329.56 per week based on a monthly gross income of $8,917.00." *Jaiden I*, 2011 WL 2306057, at *4. In setting support in the August 18, 2008 order, the trial court imputed $29,300 income to Mother. Mother appealed the imputation of income in *Jaiden I*; however, this Court declined to overturn the juvenile court's imputation of income for the relevant time period "[b]ecause Mother . . . [did not] provide reliable evidence of her income or income potential from October 1, 2007, to August 22, 2008 [i.e., the effective date of the August 18, 2008 order]. *Id*. at *3. After filing various motions, a final hearing was set for March 12, 2009.

After hearing, the court found that the parties primarily resided together from the birth of the children until February 1, 2007, and that the parties equally supported the children from February 1, 2007, until October 1, 2007. *Id*. The court thus concluded that no child support was due prior to October 1, 2007. *Id*. Father did, however, owe a child support arrearage of $21,356.63 for the period beginning October 1, 2007, and ending September 28, 2009. *Id*. The juvenile court, in its amended final order, entered a judgment in favor of Mother for $21,356.63, calculated Father's prospective child support obligation, and declined to award attorney's fees to either party. *Id*. Father timely appealed. In *Jaiden I*, this Court noted that, although the August 18, 2008 order was not a final order, "[a]t the final trial . . . the juvenile court nevertheless relied exclusively on the August 19 order—despite the presentation of evidence showing Father ceased making $107,000 in November 2008 . . . ." *Id*. at *4. Accordingly, in the first appeal, this Court affirmed the trial court in all respects except as to the calculation of Father's child support arrearage. On that issue, this Court vacated the trial court, specifically holding that:

> The juvenile court entered an order of temporary child support
> on August 18, 2008, setting Father's child support obligation at
> $329.56 per week based on a monthly gross income of
> $8,917.00. The order, effective August 22, 2008, specifically

---

[1] It is the policy of this court to use the initials of children and parties involved in juvenile court actions to protect the privacy of the children involved.

reserved all remaining issues regarding child support arrearages for trial and did not resolve the outstanding issue of paternity. The order therefore was not a final judgment. At the final trial in the matter, the juvenile court nevertheless relied exclusively on the August 18 order—despite the presentation of evidence showing Father ceased making $107,000 in November 2008—to determine Father owed a child support arrearage of $8,082.12 for the period of August 22, 2008, to September 28, 2009.

\* \* \*

In this case, Father was unemployed for a significant period of time pending the first trial. This undisputed fact appears to have been disregarded by the juvenile court. Because the "fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support," *Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009), we conclude the juvenile court should have accounted for this period of unemployment when calculating Father's child support arrearage. The existence of a temporary order setting child support pending trial does not bar reexamination and retroactive modification of the award at trial; rather, a temporary order of child support is an interlocutory order subject to retroactive modification . . . . If the evidence at trial demonstrates developments subsequent to the entry of the temporary order undermine its calculation, the court should modify the award to reflect the parties' actual circumstances. We must conclude the juvenile court erred in calculating Father's child support arrearage from August 22, 2008, to September 28, 2009, without taking into account the approximately nine-month period of time in which he was unemployed. We accordingly vacate the juvenile court's award on this single issue and remand for further consideration.

*Jaiden I*, 2011 WL 2306057, at *4– *5 (footnotes and some internal citations omitted).

Upon remand, on September 20, 2011, Father's attorney prepared and submitted a

-3-

letter to the trial court.[2]  The letter, which was filed in the trial court on September 26, 2011, states Father's position regarding this Court's holding in *Jaiden I* as follows:

> The Court of Appeals remanded for a determination of child support arrearage. . .between August 22, 2008 and September 28, 2009, taking into consideration that [Father] was not earning $107,000 during that entire period.  The Court of Appeals found that the Juvenile Court should have considered [Father's] actual income from unemployment and earning $900.00 [per] week when he resumed employment . . . .

Father attached a child support worksheet to this letter.  Concerning arrears, the letter and attached worksheet summarize Father's position as follows:

> For the period of August 22, 2008 through November 7, 2008, [Father's] income was $107,000 and he had 106 days of parenting time. . . . [Father] was obligated to pay child support in the amount of $246.93 per week for 11 weeks or a total of $2,716.23.
>
> \*                                    \*                                    \*
>
> On March 12, 2009, the juvenile court. . .awarded 156 days of parenting time to [Father].  Prior to that time, between November 8, 2008 and March 12, 2009 (18 weeks), there was a change in father's income as he began drawing unemployment

---

[2] We note that, although Father was represented by counsel at the trial of this matter, he has chosen to proceed *pro se* in this appeal.  It is well settled that pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere. As recently explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson v. Lanphere*, No. M2010–01401–COA–R3–CV, 2011 WL 3566978, at \*3 (Tenn. Ct. App. Aug. 12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App.2003)).

in the amount of $1,193.50 . . . . Mother's income of $2,458.00 remained the same and the number of days for both parents remained the same . . . . [T]he Mother. . .would be obligated to pay [Father] $148.00 monthly child support, $34.16 per week for 18 weeks for a total of $614.88.

\*                              \*                              \*

As a result of the March 12, 2009 hearing, Father received 156 days of parenting time and the mother received 209 days of parenting time. On July 7, 2009, [Father] became employed earning $900.00 weekly. Considering the change in the number of days for parenting time and that the parents' income remained the same between March 13, 2009 through July 6, 2009, Mother would have been obligated to pay Father $510.00 per month or $117.70 per week for 16 weeks for a total of $1,883.20 . . . for that period March 13, 2009 through July 6, 2009.

\*                              \*                              \*

During the period of July 7, 2009 through September 28, 2009, 12 weeks, it is undisputed that Father's weekly income for this period was $900.00 per week minus standard deductions, or $3,186.22 . . . . During this period of time, Mother's child support would have been $7.00 per month or $1.62 per week for 12 weeks for a total of $19.44 . . . for the period of July 7, 2009 through September 28, 2009.

For the entire period between August 22, 2008 through September 28, 2009, [Father] owed $2,716.23 and [Mother] owed $2,517.52. [Father] would owe [Mother] $198.91 during the entire period. Accepting the fact that [Father] paid $8,083.12 during the entire period in question, he overpaid $7,884.21 and is entitled to a credit of that amount against the $10,654.83.

Therefore, [Father] should be given a credit of $7,884.21 against the $10,654.83 child support arrearage assessed between October 1, 2007 and November 7, 2008. As a result, [Father] would only owe child support arrearage in the amount of

$2,770.62.

On September 26, 2011, in response to the foregoing position letter, Mother's attorney filed a letter with the trial court, taking the following position:

> The Court of Appeals only directed this Court to take into account the nine-month period of time [Father] was unemployed. [Father] was employed until November 7, 2008. Therefore, until that date, the Agreed Order should control. [Father's] support obligation was $329.56 per week. Therefore, he owed $3,625.16 for eleven weeks through November 7, 2008.
>
> The more difficult issue to resolve relates to the child support calculation from November 7, 2008 until September 28, 2009. Your Honor ruled that due to the fact that an Agreed Order had been in place, and [Father] had not sought to modify said Order, the Agreed Order controlled [Father's] obligation. The Court of Appeals disagreed, and stated that, "If the evidence at trial demonstrates developments subsequent to the entry of the temporary order undermine its calculation, the Court should modify the award to reflect the parties' actual circumstances."
>
> [Father's letter] argues that this Court must hold [Mother] to her income as stated in the Agreed Order, which would result in [Mother] owing child support to [Father] even though she was the primary residential parent for the two children. This is a nonsensical result that surely is not what was intended.
>
> *                              *                              *
>
> At the time of trial, [Mother] had four preschool age children. [Mother] had never made more than $8.25 per hour. The Court of Appeals did not instruct this court that it must leave the August 22, 2008 Order in place except for [Mother's] income. It did state that the Order should be modified to reflect the parties' actual circumstances . . . .

Mother attached a child support worksheet to this letter, which sets out her position on child support arrearage as follows:

[Father's] child support obligation [from August 22, 2008 through November 7, 2008] from the Agreed Order was $3,625.16.

\*                                        \*                                        \*

For the time period of November 8, 2008 until March 12, 2008, [Father's] child support obligation should be $202.00 per month or $47.00 per week. For eighteen weeks, his obligation would be $846.00.

From March 13, 2009 until July 6, 2009, [Father's] child support obligation should be $151.00 per month or $35.00 per week. For sixteen weeks, his obligation would be $846.00.

From July 7, 2009 until September 28, 2009, [Father's] child support obligation should be $639.00 per month or $147.00 per week. For those twelve weeks, his obligation would be $1,764.00.

[Father's] total child support obligation from August 22, 2008 until September 28, 2009 is $6,795.16. [Father] made child support payments during this period of time in the amount of $8,083.12. Therefore, [Father] overpaid $1,287.96. Deducting this from the $10,654.83 he owes from a previous time period, [Father] owes $9,366.87.

A hearing took place on November 18, 2011. On December 16, 2011, the trial court entered an order, stating, in relevant part:

1. The Court interprets the Court of Appeal's opinion [i.e., *Jaiden I*] to mandate this Court to change only the Father's income for the period of time from August 22, 2008 to September 28, 2009. While this Court thinks that the parties' actual circumstances should be examined during this period of time, the Court is restricted from doing so due to the Court of Appeals' Opinion.

2. Based upon the prior testimony at trial, the Court finds that [Father] made $107,000.00 from August 22, 2008 until

-7-

November 7, 2008. This is a period of eleven weeks. Pursuant to the attached child support worksheet, [Father's] child support obligation was $1,428.00 per month or $329.56 per week. Therefore, [Father's] child support obligation for this period of time would be $3,625.16.

3. Based upon the prior testimony at trial, the Court finds that [Father] made $1,193.00 per month for the period of November 8, 2008 through March 12, 2009. This is a period of eighteen weeks. Pursuant to the attached child support worksheet, [Father's] child support obligation for this period would be $56.00 per month or $12.92 per week. Therefore, [Father's] child support obligation for this period was $232.56.

4. Based upon the prior testimony at trial, the Court finds that [Father] made $1,193.00 per month for the period of March 13, 2009 through July 6, 2009. This is a period of sixteen weeks. Pursuant to the attached child support worksheet, [Mother's] child support obligation for this period would be $307.00 per month or $70.85 per week. Therefore, [Mother's] child support obligation for this period was $1,113.60.

5. Based upon the prior testimony at trial, the Court finds that [Father] made $3,186.22 per month for the period of July 6, 2009 through September 28, 2009. This is a period of twelve weeks. Pursuant to the attached child support worksheet, [Father's] child support obligation for this period would be $449.00 per month or $103.62 per week. Therefore, [Father's] child support obligation for this period was $1,243.44

6. Considering the foregoing amounts owed by the parties, from August 22, 2008 until September 28, 2009, [Father's] child support obligation was $3,967.56. [Father] paid $8,083.12. Therefore, [Father] overpaid $4,115.56 during this time period. Deducting from the $10,654.83 he owes from the previous time period, [Father] owes $6,539.27.

In reaching the conclusion that Father owes $6,539.27 in child support arrears, the worksheets attached to the trial court's order give Father a credit of $328.55 for the children's health insurance, and give Mother credit for $433.33 in work-related child care.

On January 17, 2012, Father filed a motion to alter or amend the December 16, 2011 order, arguing, *inter alia*, that:

1. The order entered on December 16, 2011 continues to provide the mother a $433.33 credit for child care expenses which, in fact, she has not incurred nor is she expected [to incur] child care expenses for the twin children. The Court should modify the child support worksheet to delete the $433.33 child care credit as such allowance is false and does not reflect "the parties actual circumstances" . . . as specifically directed by the Court of Appeals.

2. The Court should modify the child support worksheets to provide the correct amount of health insurance premiums of $438.33 that the Father actually pays for insurance coverage on the minor children.

3. The Court of Appeals declined to overturn the juvenile court's imputation of $29,300 [in income to Mother] during the period between October 1, 2007 and August 22, 2008. [Mother] did not appeal the imputation of $29,300 income for any of the period of time . . . .

4. [Mother's attorney] argued . . . that the court should consider her "actual circumstance" of earning only $300 monthly . . . .

5. Given the fact that [Mother] is no longer advocating for her actual circumstance to reflect income at $300 monthly, there is nothing in the Court of Appeals' decision that should make this court "think" that it is restricted from examining the actual circumstances of the parties to correct information known to be inaccurate, specifically amounts allocated for child care and health insurance premiums . . . .

6. The worksheet for the period designated at "7-7-09 forward" should be stricken as it reflects credit for in-home children that appears inaccurate, fails to identify the names and birth dates of the covered children, some of whom were not born as of 7-6-09 and should not be included in the calculation for the period set forth in the court of appeals decision.

On February 3, 2012, Father filed a supplemental motion to alter or amend to clarify his position that the trial court's calculation of child support, based upon the December 16, 2011 order, was incorrect because it was based upon: (1) Mother receiving an erroneous credit for work-related child care; (2) Father receiving less than full credit for his payment of the children's medical insurance premiums; and (3) Mother receiving credit for two additional children in her home.

A hearing on Father's motion to alter or amend was held on April 16, 2012. By order of April 30, 2012, the trial court denied Father's motion to the extent that it argued for additional insurance credit for Father and denial of child care credit for Mother:

> 1. The Court interprets the Court of Appeals' opinion as instructing the court that the Court is restricted to modifying the portion of the child support arrearage from August 22, 2008 to September 28, 2009 to reflect the Father's actual income. All remaining variables from the child support worksheet submitted with the August 18, 2008 Agreed Order shall remain unmodified.

However, concerning the amounts owed by Father, the trial court modified the December 16, 2011 order as follows:

> 2. From November 8, 2008 until July 6, 2009, [Father] was unemployed. His income was $1,193.00 per month. This is a period of thirty-four weeks. Pursuant to the child support worksheet. . .[Father's] weekly child support obligation during this period of time was $12.92. Therefore, [Father's] child support obligation during this period of time was $439.28.[3]
>
> 3. From July 7, 2009 until September 28, 2009, [Father's] income was $3,186.22. This is a period of twelve weeks. Pursuant to the child support worksheet . . . [Father's] weekly child support obligation during this period of time was $136.85. Therefore, [Father's] child support obligation during this period of time was $1,642.20.

---

[3] We note that, although the April 30, 2012 order references an attached child support worksheet, this attachment is not found in the record.

5. Considering the calculations as based on [Father's] actual income from August 22, 2008 until September 28, 2009, [Father's] total child support obligation during this period of time was $5,706.64. [Father] actually paid $8,083.12 during this time period. Therefore, [Father] overpaid $2,376.48 during this time. Deducting this sum from the $10,654.83 he owes from the previous time period, [Father] owes a child support arrearage to [Mother] in the amount of $8,278.35.

On May 17, 2012, Father filed a motion, asking the court to reconsider, arguing that the April 30 order is incorrect in that it relies upon the August 18, 2008 order, which was allegedly based upon erroneous facts as discussed above. The court denied Father's motion by order of May 30, 2012, stating:

The Court of Appeals in its remand specifically ordered a new calculation of [Father's] income. It did not order reconsideration of any other variables, therefore the court feels constrained to revisit the only issue it was ordered to do, i.e., [Father's] income, not other child support variables.

Father appeals. The sole issue for review is whether the trial court misinterpreted the law of the case, based upon this Court's holding in *Jaiden I*, to limit its review to Father's income and to preclude it from considering other child support variables.

The law of the case doctrine in Tennessee has been clearly established:

[U]nder the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. The doctrine does not apply to dicta.

*Creech v. Addington*, 281 S.W.3d 363, 383 (Tenn. 2009) (citing *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998)). As explained in *Memphis Publishing*, the doctrine is not constitutionally mandated, nor is it a limitation on the court's power, but "it is a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited." *Id*. (citing *Ladd by*

***Ladd v. Honda Motor Co., Ltd***, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996) (citations omitted)). The purpose of the rule is to promote "the finality and efficiency of the judicial process, avoid[ ] indefinite relitigation of the same issue, foster [ ] consistent results in the same litigation, and assure[ ] the obedience of trial courts to the decisions of appellate courts." ***Id***. The exceptions to the law of the case doctrine are limited and a reconsideration of an issue is permitted only if: (1) the evidence produced on remand is substantially different than the evidence produced at the initial proceeding; (2) the earlier findings of law are "clearly erroneous and would result in manifest injustice if allowed to stand"; (3) the prior ruling is "contrary to a change in controlling law that occurred between the first and second appeal." ***Memphis Publ'g Co.***, 975 S.W.2d at 306.

As discussed above, in ***Jaiden I***, this Court remanded only the issue of Father's child support arrearage to the trial court for determination. Our holding was based upon the statement of the issue presented in the first appeal, i.e., "whether the juvenile court correctly calculated Father's child support arrearage from August 22, 2008, to September 28, 2009, based upon an annual income of $107,000." In the first appeal, no issue was raised concerning other variables, e.g. insurance premiums, additional children, or child care credits. Accordingly, this Court did not specifically address these additional variables, but limited its review only to the question of whether the trial court had relied upon Father's actual income in making its calculations. As noted above, the law of the case doctrine only applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. ***Creech v. Addington***, 281 S.W.3d at 383. Because the question of variables other than Father's actual income were not actually before this Court in ***Jaiden I***, the trial court's interpretation of our opinion is, respectfully, myopic.

The gravamen of our holding in ***Jaiden I*** is that the parties' actual circumstances should dictate the calculation of their respective support obligations. In the first appeal, we determined, based on the stated issue, that Father's actual income was not used to calculate his support obligation for the period August 22, 2008 to September 28, 2009. But, contrary to the trial court's interpretation, this Court said nothing about limiting the review only to Father's actual income. Rather, we clearly stated that, "[i]f the evidence at trial demonstrates developments subsequent to the entry of the temporary order undermine its calculation, the court should modify the award to reflect the parties' actual circumstances." The mandate, then, was for the trial court to determine the parties' actual circumstances, within the parameters set in the opinion. For example, in ***Jaiden I***, this Court specifically affirmed the imputation of income to Mother from October 1, 2007 until August 22, 2008. Accordingly, on remand, the trial court, under the law of the case doctrine, would be precluded from revisiting that specific question. Likewise, under our holding in ***Jaiden I***, the trial court is precluded from revisiting the issue of attorney's fees.

In addition, ***Jaiden I*** only addresses child support obligations and arrears arising on or after August 22, 2008. In this regard, ***Jaiden I*** gave the trial court a specific mandate to consider Father's actual income only from August 22, 2008 going forward. However, contrary to the trial court's interpretation, this Court did not otherwise limit the trial court's review on remand concerning its consideration of factors and variables that may have changed since the August 22, 2008 date. In fact, in ***Jaiden I***, we cited extensively from the case of ***Richardson v. Spanos***, 189 S.W.3d 720 (Tenn. Ct. App. 2005), for the proposition that the trial court retains discretion in determining support obligations. ***Jaiden I***, 2011 WL 2306057, at *1–*2. Again, the gravamen of our holding in ***Jaiden I*** is that, in exercising its discretion, the trial court should endeavor to ascertain and give effect to the parties' actual circumstances, which will necessarily change over the course of time, e.g., people remarry, have more children, insurance premiums rise and fall, and child care needs change. Accordingly, it was not this Court's intention to limit the court's discretion or its ability to review all relevant variables that may have arisen or changed from August 22, 2008 until the date of the hearing on remand. Rather, our opinion was intended to encourage the trial court to ascertain the parties' actual circumstances and to calculate the support obligations in accordance with their respective realities. Upon remand, the court should not limit its review, but should allow evidence, from both sides, concerning changes in circumstances and other relevant variables, from August 22, 2008 until the date of the hearing, in an effort to ground its calculation of child support and any arrearage thereon on the totality of the actual circumstances that exist, which is the only way to reach a just result.

Mother asks this Court to award her attorney's fees incurred in defending this appeal. Mother's appellate brief makes no argument concerning the grounds for her request, requesting only that "her attorney fees and costs be paid as a result of defending this appeal." An award of appellate attorney's fees is a matter within this Court's sound discretion. ***Archer v. Archer***, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). In considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case. ***Darvarmanesh v. Gharacholou***, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at * 16 (Tenn. Ct. App. July 19, 2005). There is no doubt that Father owes a child support arrearage in this case. The only question is the amount thereof. Because the trial court misinterpreted our opinion in ***Jaiden I***, Mother has incurred additional costs and fees in having to defend a second appeal of this matter. It appears, from the record, that Father is in a better position to bear the burden of these costs than Mother. Accordingly, we grant Mother's request for attorney's fees and costs incurred in defense of this appeal, and remand for a calculation of the reasonable amount of these fees.

For the foregoing reasons, we vacate the order of the trial court and remand for further

proceedings consistent with this Opinion, including, but not limited to a determination of the reasonable costs and fees associated with this appeal. Costs of this appeal are assessed to the Appellant, Greg W., and his surety.

_____
J. STEVEN STAFFORD, JUDGE