FILED
06/05/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 8, 2019 Session

**IN RE MAKINNA B.**

**Appeal from the Juvenile Court for Montgomery County
No. MC-JV-PL-CV-14-2179      Kenneth R. Goble, Judge**

——————————————————

**No. M2018-00979-COA-R3-JV**

——————————————————

This appeal involves a father's petition to modify an existing parenting plan to change the designation of primary residential parent from the mother to the father. After a hearing, the trial court agreed with the parties' stipulation that a material change in circumstances had occurred since the entry of the previous parenting plan due to various difficulties experienced by the parties and their lack of cooperation. The trial court concluded that it was in the best interest of the child to designate the father as primary residential parent. The trial court entered a modified parenting plan and child support worksheets. The mother appeals. We vacate and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded**

CARMA D. MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Elizabeth A. Fendley, Clarksville, Tennessee, for the appellant, Sarah B. (now Sarah W.).

H. Reid Poland, III, Clarksville, Tennessee, for the appellee, Aaron S.

**OPINION**

## I.   FACTS & PROCEDURAL HISTORY

Makinna B.[1] was born to unmarried parents in April 2014. Shortly thereafter, Aaron S. ("Father") filed a petition to confirm parentage and establish a permanent

_____

[1] It is the policy of this Court to use only the first name and last initial (and, in some cases, just the initials) of the parties involved in juvenile court actions to protect the privacy of the children. *In re Jaiden C.W.*, 420 S.W.3d 13, 15 n.1 (Tenn. Ct. App. 2013).

parenting plan. The child's mother, Sarah B. ("Mother"), agreed that Father is the child's father. Father initially sought equal parenting time, but before the issue of parenting time was resolved, Father moved from Tennessee to St. Paul, Minnesota, to live with his father and further his education. In March 2016, the trial court entered an agreed order naming Mother primary residential parent and granting Father 74 days of parenting time per year.

Nine months later, in December 2016, Father filed a petition to modify the parenting plan, alleging that a material change in circumstances had occurred due to Mother being unnecessarily difficult and antagonistic. Father claimed that Mother was impeding the bond between him and Makinna, and he asked the court to designate him as primary residential parent.

Father and Mother attended mediation and agreed that a material change in circumstances had occurred requiring modification of the existing parenting plan. They could not agree as to which parent should be designated the primary residential parent, but they did agree on the parenting schedule that they would follow once the trial court designated the primary residential parent. They also agreed on the figures to be used for each parent's income in the child support calculation.

The trial court held a hearing on December 14, 2017, to consider the disputed issue of which parent should be named the primary residential parent. By that time, Makinna was three years old. Mother was married and had another daughter, and she was pregnant with a third child. Father was living with his fiancée in Minnesota. The trial court heard testimony from Father, Mother, Mother's husband, the child's maternal grandmother, and the child's paternal grandmother. The trial court also received exhibits consisting of text messages between Mother and Father, and the court viewed a video of an incident that occurred at a custody exchange of the child.

At the conclusion of the testimony, the trial judge announced his oral ruling in favor of Father. The trial court entered its written order in April 2018. The trial court concluded that it was in the best interest of Makinna to reside primarily with Father in Minnesota, with Mother having parenting time according to the schedule crafted by the parties at mediation. The written order referenced an attached parenting plan, but it was inadvertently omitted when the order was filed.

On May 1, 2018, the trial court entered an amended order noting that its prior order failed to include the necessary parenting plan and child support worksheet. The amended order had a parenting plan and child support worksheet attached. The parenting plan stated that Mother's child support obligation from January to March 2018 (the three-month period following the December 2017 hearing) was $248 per month. However, the parenting plan stated that Mother's child support obligation had increased to $403 per month beginning April 1, 2018. It explained, "The daycare expense is a recent development[.]" The attached child support worksheet included an expense of $1,009 per

month for Father for work-related childcare, which led to the increase in Mother's child support obligation. Mother timely filed a notice of appeal.

## II. ISSUES PRESENTED

Mother presents the following issues, which we have slightly reworded, for review on appeal:

1. Whether the order of the trial court should be vacated for failure to make sufficient findings of fact and conclusions of law;
2. Whether the trial court provided only a pretextual consideration of the best interest factors when designating Father as primary residential parent; and
3. Whether the trial court erred in setting Mother's child support obligation at $403 per month.

For the following reasons, the decision of the juvenile court is vacated and remanded for further proceedings.[2]

## III. DISCUSSION

### A. *Primary Residential Parent Designation*

When considering a petition to modify a permanent parenting plan, we must first determine if a material change in circumstances has occurred since the entry of the existing plan, and if it has, we then apply the "best interest" factors of Tennessee Code Annotated section 36-6-106(a). *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 496 (Tenn. 2017) (citing *Armbrister v. Armbrister*, 414 S.W.3d 685, 697 (Tenn. 2013)). "Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing *Armbrister*, 414 S.W.3d at 693). The Tennessee Supreme Court has repeatedly emphasized "the *limited* scope of review to be employed by an appellate court in

---

[2] In the conclusion section of Father's brief, he requests that "appellate attorney fees incurred by [Father] be paid by [Mother]." However, Father did not list this as an issue in his brief or develop any argument with respect to this issue. As a result, we deem the issue waived. "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). "By the same token, an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012); *see, e.g.*, *Rigsby v. Rigsby*, No. E2014-02095-COA-R3-CV, 2015 WL 7575075, at *7 (Tenn. Ct. App. Nov. 25, 2015) ("Because Mother did not raise the issue of attorney's fees on appeal in her statement of the issues, we determine this issue to be waived.").

reviewing a trial court's factual determinations in matters involving child custody and parenting plan developments." *C.W.H.*, 538 S.W.3d at 495. According to the court, "'[a] trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions.'" *Id.* (quoting *Armbrister*, 414 S.W.3d at 692). Therefore, on appeal, we presume that the trial court's factual findings on these issues are correct, and we will not overturn them unless the evidence preponderates against them. *Id.* The findings of fact and analyses of the trial court "should be afforded great deference." *Id.* at 500.

We review the trial court's designation of primary residential parent for an abuse of discretion. *See C.W.H.*, 538 S.W.3d at 498-99; *Kelly*, 445 S.W.3d at 696; *Maupin v. Maupin*, 420 S.W.3d 761, 770 (Tenn. Ct. App. 2013) ("[T]he ultimate question as to who should be the primary residential parent on appeal is whether the trial court abused its discretion in its selection[.]"). A trial court abuses its discretion when its ruling "'falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)).

Here, the parties agree that a material change in circumstances has occurred. Because neither party appealed the trial court's ruling as to that threshold issue, we need not consider it on appeal. *See C.W.H.*, 538 S.W.3d at 497. The remaining issue is "whether the existing parenting plan is no longer in the best interest of the child[.]" *Id.* The factors relevant to the best interest analysis are set forth in Tennessee Code Annotated section 36-6-106(a). They include:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be

- 4 -

considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . . ;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. . . . ;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. . . . ;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.


Tenn. Code Ann. § 36-6-106(a). "Although there is no statutory requirement that the

court list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination, the statute, nevertheless, requires the trial court to consider all the applicable factors." *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at \*4 (Tenn. Ct. App. Feb. 22, 2013) (quotation omitted).

Tennessee Rule of Civil Procedure 52.01 provides that a trial court "shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." This Court has repeatedly emphasized that "a trial court should be as detailed as possible when rendering a decision in a custody case." *In re D.A.J.*, No. M2004-02421-COA-R3-JV, 2005 WL 3369189, at \*7 (Tenn. Ct. App. Dec. 9, 2005). Factual findings are "particularly important" in custody cases, "as these determinations 'often hinge on subtle factors, including the parents' demeanor and credibility during [the] proceedings.'" *In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at \*4 (Tenn. Ct. App. Nov.8, 2012) (quoting *Hyde v. Amanda Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at \*3 (Tenn. Ct. App. Oct. 12, 2010)).

Unfortunately, in this case, our ability to review the trial court's best interest analysis is hampered by the lack of factual findings in the court's written order. The order states that the trial court "considered and weigh[ed] all the factors in T.C.A. [§] 36-6-106 in making its decision[,] including the fact that [Mother] has been the primary care giver for the majority of the child's life[.]" Thus, the order indicates that the trial court considered (but did not give much weight to) the fifth best interest factor: "[t]he degree to which a parent has been the primary caregiver[.]" Tenn. Code Ann. § 36-6-106(a)(5).

Aside from this reference, however, the trial court did not mention or analyze *any* other statutory factor in its best interest analysis. We do not know which best interest factors the trial court found applicable or inapplicable or what its conclusions were with respect to those factors. Instead of analyzing the statutory best interest factors, the trial court simply found that "the parties do not get along," and it described Mother's lack of cooperation with Father as "striking" and "disturb[ing]." It also found that Father was more credible in his testimony than Mother. The trial court described a few specific incidents in which Mother had failed to cooperate with Father, including occasions when she did not facilitate a telephone call with Makinna on Father's Day and refused to provide Father with information about Makinna's school and medical care. These examples could arguably be relevant to factor (2), and particularly, "the willingness and ability of each of the parents [] to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child." Tenn. Code Ann. § 36-6-106(a)(2). However, the trial court did not mention this factor, nor did it include factual findings regarding any other best interest factor before concluding that it was in the best interest of Makinna to live primarily with Father in Minnesota.

The trial court did make findings regarding the video it viewed. The trial court's order states that "the Court viewed a video of an exchange of the minor child by the paternal grandmother and [Mother] and her husband in reaching its decision[.]" The order states, "[I]t is extraordinary to the Court the language used by [Mother] and step-father in front of the minor child." The court noted that both Mother and her husband testified that they had not spoken derogatorily about Father in the presence of the minor child, and as a result, the court found their testimony "not credible." From our review of the record, however, the referenced video was never admitted into evidence at the hearing. The transcript simply reflects that the trial judge viewed a video clip while it was playing on someone's cellular phone. The video does not appear in the appellate record as an exhibit, and it was not transcribed in the transcript. As such, we are unable to review the video or the trial court's factual findings with respect to it.

"Although trial courts have broad discretion in fashioning a parenting arrangement, the decision 'must be based on the proof at trial and the applicable principles of law.'" *Pandey*, 2013 WL 657799, at *6 (quoting *Morris v. Morris*, No. W2010-00293-COA-R3-CV, 2011 WL 398044, at *8 (Tenn. Ct. App. Feb. 8, 2011)). A child custody determination "is a very fact specific inquiry . . . within the purview of the trial court, not the appellate court." *Kathryne B.F. v. Michael B.*, No. W2013-01757-COA-R3-CV, 2014 WL 992110, at *7 (Tenn. Ct. App. Mar. 13, 2014). Our role on appeal is to review the specific findings of the trial court against the evidence in the record. *Id.* We are generally reluctant to second-guess a trial court's decision on parenting issues, but without sufficient factual findings, we are unable to afford it appropriate deference. *See Pandey*, 2013 WL 657799, at *4.

Because of the lack of findings regarding the best interest of the child, we must vacate the order of the trial court and remand the case for the trial court to make additional findings of fact in compliance with Tennessee Rule of Civil Procedure 52.01. In doing so, we recognize that

> "[E]vents and lives have not stood still while this custody dispute has been in the courts." *Maxwell v. Woodward*, No. M2011-02482-COA-R3-CV, 2013 WL 2420500, at *22 (Tenn. Ct. App. May 31, 2013) (quoting *Gorski v. Ragains*, No. 01A01-9710-GS-00597, 1999 WL 511451, at *4 (Tenn. Ct. App. July 21, 1999)). The trial court should remain mindful of this fact. As we have previously explained, "when a trial court is directed to reconsider an issue on remand that involves the circumstances of children and their parents, 'the trial court should endeavor to ascertain and give effect to the parties' actual circumstances[.]'" *Kathryne B.F.*[,] 2014 WL 992110, at *7 [] (quoting *In re C.W.*, 420 S.W.3d 13, 22 (Tenn. Ct. App. 2013)). In this case, the trial court's best interests determination should consider the circumstances of the parties and minor child as they exist as of the date of the hearing on remand.

*Stricklin v. Stricklin*, 490 S.W.3d 8, 19 (Tenn. Ct. App. 2015).

### B. *Child Support*

The final issue we address involves the amount of child support awarded by the trial court pursuant to its amended order. Again, the amended order provided that Mother's child support obligation increased effective April 1, 2018, to $403 per month. Mother argues that the trial court erred in calculating child support based on Father having a work-related childcare expense of $1,009 per month when no evidence was presented at the hearing of such an expense. For his part, Father admits that no such evidence was presented at the hearing. His brief states that "he had no daycare expense" at the time of the hearing because he had not yet been named primary residential parent. Father testified at the hearing that when he needed childcare, Makinna stayed with his fiancée or his grandparents. According to Father's brief, "Father obtained daycare upon returning home and instructed his attorney the monthly cost, and that was included in the child support calculation." Father suggests that this course of action was appropriate. We cannot agree.

Work-related childcare costs are "expenses for the care of the child for whom support is being determined which are due to employment of either parent or non-parent caretaker." Tenn. Comp. R. & Regs. 1240-02-04-.02(29)(a). Additional expenses for work-related childcare are to be included in the calculations to determine child support. Tenn. Comp. R. & Regs. 1240-02-04-.04(8)(a)(1). According to the Tennessee Child Support Guidelines:

> Childcare expenses necessary for either parent's employment, education, or vocational training *that are determined by the tribunal to be appropriate*, and that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together, shall be averaged for a monthly amount and entered on the Worksheet in the column of the parent initially paying the expense.

Tenn. Comp. R. & Regs. 1240-02-04-.04(8)(c)(1) (emphasis added).

The trial court's calculation of work-related childcare expenses must be supported by evidence in the record. *See, e.g.*, *In re Briley R.*, No. M2016-01968-COA-R3-JV, 2017 WL 5054304, at *6 (Tenn. Ct. App. Oct. 31, 2017) (remanding the issue of child support where the juvenile court included childcare expenses of $765 per month in its calculation but our independent review of the record shed no light on how the court arrived at this amount). Here, the evidentiary record contains no evidence regarding Father's work-related childcare expenses because Father simply told his attorney the monthly cost after the hearing, and that amount was then included in the child support

calculation in the amended order.

This Court considered a similar situation in *Sample v. Sample*, No. M2017-02409-COA-R3-CV, 2018 WL 4203545 (Tenn. Ct. App. Sept. 4, 2018). In that case, the trial court included $975 per month in childcare expenses in its child support calculation. *Id.* at *6. The wife's attorney had sent a letter to the trial court with attached invoices denoting daycare expenses. *Id.* According to the wife, the parties also met in a chambers conference and agreed to exchange childcare costs, and the relevant invoices were presented to opposing counsel and the trial judge. *Id.* We found this procedure insufficient. We explained, "Although the costs and details of childcare expenses may have been presented to Husband and discussed in a chambers conference, that does not cure the fact that such information, as noted by Husband in his brief, cannot be found in the record." *Id.* As such, we vacated the child support award and remanded for further proceedings on the issue, noting that the trial court could re-open the proof in order to assist it in making its determination. *Id.*

Because we have vacated the trial court's custody order, and no proof was presented to the trial court to support the inclusion of work-related childcare expenses in the child support calculation, we vacate the child support award and remand for further proceedings on the issue. As in *Sample*, the trial court may re-open the proof in its discretion. *See id.* Pending a hearing on remand, the parties must continue to abide by the parenting plan attached to the amended final order of May 1, 2018.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the juvenile court is vacated and remanded for further proceedings. Costs of this appeal are taxed equally to the appellant, Sarah B., and to the appellee, Aaron S., for which execution may issue if necessary.

_____
CARMA D. MCGEE, JUDGE