FILED
02/07/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 14, 2020 Session

**IN RE JAMES D. ET AL.**

**Appeal from the Chancery Court for Shelby County**
**No. CH-18-1629-1  Walter L. Evans, Chancellor**

_____

**No. W2019-00863-COA-R3-PT**

_____

This is a termination of parental rights case, wherein mother and stepfather petitioned to terminate father's parental rights as to his two minor children on the grounds that he had abandoned the children by failing to visit and by failing to support them. Additionally, mother and stepfather petitioned that stepfather be allowed to adopt the children. The trial court denied the termination petition, finding that father had not willfully abandoned the children because mother had thwarted his attempts to visit and support them. On appeal, we find that father did willfully abandon the children. Accordingly, we reverse and remand for a determination of whether termination of father's parental rights is in the best interests of the children. The trial court's decision regarding stepfather's petition to adopt the minor children must await the trial court's determination on remand as to whether or not termination of father's parental rights is in the best interest of the children.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KENNY ARMSTRONG, JJ., joined.

Mitchell D. Moskovitz and Adam N. Cohen, Tennessee, for the appellants, Mary J., and Hunter J.

Justin D., Cordova, Tennessee, Pro se.

**OPINION**

## I. BACKGROUND AND PROCEDURAL HISTORY

Mary J. ("Mother") and Justin D. ("Father") were married on June 4, 2006. They are the biological parents of J.D., born October 20, 2007, and H.D., born August 9, 2009

(together, "the Children").[1]  Mother and Father divorced on February 29, 2012.  At the time of the divorce, Father had issues with addiction and substance abuse, and, accordingly, the Parenting Plan afforded him only supervised parenting time. Additionally, an addendum to the Parenting Plan (the "Addendum") allowed Mother to request that Father submit to drug screens.  The Addendum provided further that, in the event Father refused or failed a drug screen, his parenting time would be moved to and supervised by the Exchange Club.

On November 10, 2018, Mother married Hunter J. ("Stepfather").  On November 14, 2018, Mother and Stepfather filed a Petition for Termination of Parental Rights in the Chancery Court of Shelby County (the "trial court").  On December 17, 2018, Mother and Stepfather filed an Amended Petition for Termination of Parental Rights and Petition for Adoption (the "Petition").  Therein, they alleged that Father had willfully abandoned the Children pursuant to Tennessee Code Annotated sections 36-1-113(g)(1) and 36-1-102.  Additionally, they petitioned that, should Father's rights be terminated, the trial court should grant Stepfather's adoption of the Children.  Father filed a response to the Petition on January 7, 2019, claiming that he had made numerous attempts in the preceding twenty-four months to contact Mother with the express purpose of visiting the Children and meeting his child support obligations under the Parenting Plan.

It is undisputed that the last time Father had visited the Children in any setting was November 7, 2015.  In the years following their divorce, Mother requested Father submit drug screens on nearly 20 occasions but that he failed to comply with any of her requests. Father, however, testified that he submitted to "one or two" of them.  Nevertheless, Father's supervised parenting time was moved to the Exchange Club in October 2014. Father, however, often cancelled visits and sometimes failed to appear for his designated parenting time altogether.[2]  Father testified that he attempted to visit with the Children in November 2017 but that Mother cancelled the visit.

Since the parties' divorce in February 2012, Father has made only two child support payments—a full payment of $721 in February 2012 and a partial payment of $350 in March 2012.  Accordingly, as of the time of the disposition hearing on the Petition, Father's total arrearage exceeded $70,000.[3]  Father, however, testified that, on December 11, 2017, he had sent an $8,000 cashier's check to his own mother, who then

---

[1] In cases involving minor children, it is this Court's policy to redact names sufficient to protect the children's identities.

[2] A November 21, 2015 record from the Exchange Club reflects that Mother and the Children arrived on time for a scheduled visitation with Father.  Father, however, failed to appear without calling, and Mother was subsequently informed "not to return to the [Exchange Club] until contacted by Program Supervisor."

[3] Father has maintained gainful employment since February 2017, when he began working full time at American Yeast.  There, he earned $61,268 in 2017 and $79,938 in 2018.

forwarded the check to Mother's mother.[4]  According to Father, the check was intended to be the first of many installments to be applied toward his total arrearage.  Mother, however, never cashed the check and sent it back to Father with instructions that, if it was intended to serve as child support, it needed to be paid through the Central Child Support Office.

A disposition hearing on the Petition was held on April 10, 2019, and, on April 30, 2019, the trial court entered its final order, denying the Petition.  In denying the Petition, the trial court concluded that Father had not willfully abandoned the Children. Specifically, the trial court made the following findings of fact and conclusions of law:

> 8. When pressed as to why Father has been sober since 2016 and did not immediately attempt to initiate contact or child support payments, Father asserted that he was rebuilding his life so he could be stable before he was back in his children's lives.
> 9. Father did not think it was fair to the Minor Children to be in and out of their lives infrequently while he was adjusting to being sober and a productive member of society again.
> 10. Father noted that he had emailed Mother several times in 2017 requesting to begin the process of coming back into the children's lives and paying child support.
> 11. The Court finds that Father felt thwarted by Mother rebuffing Father's attempts and refusal to work with him outside of the Court system.
> 12. The Court therefore finds that Father was not willful in his abandonment but rather Mother "significant[ly] restrain[ed] . . . or interfe[red] with [Father's] efforts to support or develop a relationship with the child[ren]." *Audrey S.* at 864.

Additionally, as to the attempted $8,000 payment by Father in December 2017, the trial court found that "[a]n $8,000 check is a large sum which demonstrated Father's full and honest intent to resume child support and make up for the large arrearage owed. However, Mother's refusal to accept the monies strikes the Court as an attempt to restrain Father's efforts to support the Minor Children."  The trial court further found that "Mother's continued refusals to work with Father was a justifiable excuse as to why he did not support the Minor Children or visit them."  Because the trial court denied the petition to terminate, there was no basis for the trial court to consider Stepfather's petition to adopt the minor children. Mother and Stepfather appealed.

## II.   ISSUES PRESENTED

---

[4] Father had previously, in August 2017, asked Mother how he could resume paying child support.  Mother responded by reminding Father that the details on how to remit child support were set forth in the parties' Parenting Plan and other trial court orders.

Mother and Stepfather raise three issues for our review on appeal, which we rephrase as follows:

1. Whether the trial court erred by determining that Mother and Stepfather had not presented clear and convincing evidence of the ground of abandonment by willful failure to visit.
2. Whether the trial court erred by determining that Mother and Stepfather had not presented clear and convincing evidence of the ground of abandonment by willful failure to support.
3. Whether the trial court erred by not determining that termination of Father's rights and adoption by Stepfather were in the best interests of the Children.

### III. STANDARD OF REVIEW

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (Tenn. 1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of a parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interests must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In view of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is de novo

with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

## IV. DISCUSSION

As noted above, Mother and Stepfather petitioned to terminate Father's rights on the grounds that he had willfully abandoned the Children by failing to visit and by failing to support them. Termination of a parent's rights may be initiated based on "[a]bandonment by the parent or guardian, as defined in § 36-1-102[.]" Tenn. Code Ann. § 36-1-113(g)(1). As is relevant here, Tennessee Code Annotated section 36-1-102 provides that "abandonment" means the following:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i). It is undisputed that, during this relevant statutory period, Father failed to visit and failed to support the Children within the meaning of Tennessee Code Annotated section 36-1-102(1)(A)(i). It is also undisputed that Father last visited the Children in November 2015, and, as the trial court found, "[t]here are [sic] no record of child support payments that were made by Father after his and Mother's divorce except for $721 paid in February 2012 and $350 paid in March 2012." Rather, the essential issue on appeal is whether Father's abandonment of the Children was willful. Here, the trial court concluded that "Father was not willful in his abandonment of the Minor Children." As such, we must determine whether the evidence preponderates against the trial court's determination, by clear and convincing evidence, that Father's abandonment of the Children was not willful. Additionally, we note that, although we review the trial court's findings of fact with a presumption of correctness, the trial court's conclusion that Father's failure to visit and failure to support did not constitute willful abandonment is a question of law, which we review *de novo* with no presumption of correctness. *See In re Catherine J.*, No. W2017-00491-COA-R3-PT, 2018 WL 618703, at *14 (Tenn. Ct. App. Jan. 30, 2018) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)).

Prior to 2018, the statutory definition of abandonment placed the burden of proof on the petitioner to show that the parent's failure to visit or failure to support was "willful." In July 2018, the General Assembly amended the statute, establishing

willfulness as an affirmative defense and shifting the burden of proof to the parent or guardian to show that his or her failure to visit or failure to support was not willful. For cases filed on or after July 1, 2018, Tennessee Code Annotated section 36-1-102(1)(I) now provides:

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

Tenn. Code Ann. 36-1-102(1)(I). Here, Mother and Stepfather filed the Petition on November 14, 2018.[5] Accordingly, having raised lack of willfulness as an affirmative defense, Father had the burden to show that his failure to visit the Children was not willful. As this Court has previously explained:

> Willfulness in the context of termination proceedings does not require the same standard of culpability as is required by the penal code, nor does it require that the parent acted with malice or ill will. *In re Audrey S.,* 182 S.W.3d at 863; *see also In re S.M.,* 149 S.W.3d 632, 642 (Tenn. Ct. App. 2004). Rather, a parent's conduct must have been willful in the sense that it consisted of intentional or voluntary acts, or failures to act, rather than accidental or inadvertent acts. *In re Audrey S.,* 182 S.W.3d at 863. "A parent cannot be said to have abandoned a child when his failure to visit or support is due to circumstances outside his control." *In re Adoption of Angela E.,* 402 S.W.3d 636, 640 (Tenn. 2013) (citing *In re Adoption of A.M.H.,* 215 S.W.3d at 810)).

*In re Braxton M.,* 531 S.W.3d 708, 722 (Tenn. Ct. App. 2017) (quoting *In re Alysia S.,* 460 S.W.3d 536, 565-66 (Tenn. Ct. App. 2014)).

We first address the trial court's holding that "Father was not willful in his abandonment of the Minor Children" as it pertains to his failure to support them. As to this ground, the trial court found as follows:

11. There are no records of child support payments that were made by

---

[5] While Mother and Stepfather amended the Petition on December 17, 2018, "the relevant period for purposes of abandonment is the four-month period immediately preceding the filing of the original petition." *In re Adoption of Angela E.,* 402 S.W.3d 636, 640 (Tenn. 2013) (citing *In re D.L.B.,* 118 S.W.3d at 366).

Father after his and Mother's divorce except for $721 paid in February 2012 and $350 paid in March 2012.

. . . .

13. In December 2017, Father has his mother sent [sic] a cashier's check for $8,000, which he purchased, to Mother's parents to be forwarded to Mother for overdue child support.

14. The cashier's check was returned uncashed to Father. Mother testified she instructed Father that pursuant to the PPP, child support must be paid through the State of Tennessee Central Child Support Office and refused to accept the child support payment offer.

15. Father testified that it "did not seem logical" to put himself in the states [sic] care for the support of his children and made no payments through the Tennessee's Child Support Office.

. . . .

17. Father has had gainful employment since February 2017, in which he earned $61,268 in 2017 and $79,938.22 in 2018.

18. Father admits to not having attempted any further child support payments after the $8,000 check was returned to him, due to the refusal of Mother to accept the cashier's check.

19. Father's arrearage of child support payments exceeds $70,000.

Despite these findings, the trial court further found that "Father felt thwarted by Mother rebuffing [his] attempts and refusal to work with him outside the Court system[,]" ultimately concluding that Father was not willful in his failure to support because Mother had significantly restrained and interfered with his efforts to do so. We disagree.

As to a parent's failure to support, this Court has stated that "[f]ailure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re M.L.D.*, 182 S.W.3d at 896 (quoting *In re Adoption of T.A.M.,* No. M2003–02247–COA–R3–PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)). Here, Father never made any effort to pay child support through the Central Child Support Office, despite the governing order and parenting plan requiring him to do so and despite his ability to do so, as indicated by his annual income for the years 2017 and 2018. While Father did attempt to make an $8,000 payment in December 2017, Mother's refusal to accept the payment because it was not in compliance with either the parenting plan or the trial court's order does not constitute a restraint or interference on Father's efforts, thus excusing him from his child support obligations. "A custodial parent's or third party's conduct does not excuse a biological parent's willful failure to support or visit unless that conduct actually prevents or significantly hinders the parent from doing so." *Id*. at 896 (citing *In re DMD,* No. W2003–00987–COA–R3–PT, 2004 WL 1359046, at *3 (Tenn. Ct. App. June 17, 2004). Here, Mother's refusal to accept the $8,000 cashier's check did not "actually prevent" or "significantly hinder"

Father's attempt to support the Children. Further, Mother did not outright "refuse" the $8,000 payment; rather, she caused the cashier's check to be returned to Father with instructions that, if the payment was intended to be child support, it needed to be paid through the Central Child Support Office in order to be properly credited as child support. Father, however, admitted that he made no effort to do so, his only excuse being that it "didn't seem like a logical thing for me to do." Accordingly, there were no "circumstances outside his control" that prevented Father from providing financial support to the Children. *See In re Adoption of Angela E.*, 402 S.W.3d at 640. Based on the foregoing, we conclude that the evidence preponderates against the trial court's finding that Father's failure to support was not willful. Moreover, we conclude that Mother and Stepfather did establish by clear and convincing evidence that Father willfully failed to support the Children and, thus, reverse the trial court's finding that Father's failure to support was not willful.

We next address the trial court's holding that "Father was not willful in his abandonment of the Minor Children" as it pertains to his failure to visit them. Specifically, the trial court found as follows:

> 31. Father had supervised visitations at the Exchange Club with the Minor Children.
> 32. Father's last visit with the Minor Children at the Exchange Club was in November 2015.
> 33. Father testified he attempted another visit in November 2017 with the Minor Children, but the visit was cancelled by Mother.
> 34. Father testified he sent Mother an email in early 2017 requesting to see the Minor Children and resume child support.
> 35. Father stated that Mother merely directed Father to the Court system.
> 36. Father testified he did not want to use the Courts to force his way into the Minor Children's lives but wanted Mother to allow him to see the Children.

As with Father's failure to support, the trial court further found that he had "felt thwarted by Mother" and that Mother had significantly restrained and interfered with his efforts to visit the Children, ultimately concluding that his failure to do so was not willful. Again, we disagree.

As this Court has stated, "[a] parent's failure to visit may be excused by the acts of another only if those acts actually prevent the parent from visiting the child or constitute a significant restraint or interference with the parent's attempts to visit the child." *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009) (citing *In re Audrey S.*, 182 S.W.3d at 864). Father maintains on appeal that Mother interfered with his efforts to visit the Children by requiring him to contact the Exchange Club. As noted previously, the Addendum to the parenting plan provided that, in the event that Father refused or failed a drug screen, his

parenting time would be supervised by the Exchange Club. Specifically, the Addendum provided as follows:

> Should Father fail or refuse to submit to a drug test, the Father's parenting time will be limited to four hours a week on Tuesdays, Thursdays, or Saturdays at the Exchange Club of Memphis or another mutually agreeable location . . . . Father's supervised visitation shall last until Father passes drug urine tests for six (6) months in a row.

The record indicates that, given Father's past refusals to submit to drug screens, Father's supervised parenting time was moved to the Exchange Club in October 2014 in accordance with the Addendum. Father, however, argues that the conditions set forth in the Addendum were satisfied as of April 2017 and that, as a result, supervised visitation was no longer required. Father notified Mother of his alleged sobriety in an August 3, 2017 email, in which he stated the following:

> I've been doing well[.] I have almost 10 months clean . . . . I'm in a diversionary program with the court in which I take randomized drug screens every week. I have to call in everyday [sic] and I never know when I will get tested[,] usually at least twice a week. I've been doing that for the past 8 months so I'm sure the court will provide me with a copy of all the urine screen results if I ask.

Yet, after our review of the record, and as Mother and Stepfather note in their brief on appeal, there are no clean drug screens anywhere in the record, and it appears that no clean drug screens were ever tendered to the trial court. Therefore, the condition in the Addendum providing that Father's visitation was to be supervised by the Exchange Club remained in effect.

Father also argues on appeal that Mother "ignored" his alleged satisfaction of the sobriety condition in the Addendum and that it "was seen as inconsequential to mother." Father's argument, however, is not supported by the record. Mother responded to Father's August 3, 2017 email later the same day as follows: "There is nothing to work out with me regarding child support or visitation. These have already been set up through the court agreements and you would need to go through the appropriate channels." Mother's insistence that Father coordinate his visitation through the appropriate channels does not constitute a significant restraint or interference with Father's attempts to visit the Children, especially considering Father himself stated in the August 3, 2017 email that "[w]e can go through my parents . . . *or we can go through the courts*." (emphasis added). Additionally, and more specifically, Father stated the following in the email:

> I'm willing to work with the exchange club if you think that is the best route for now. Im [sic] wanting to hear any suggestions you may have because I know you love the boys very much and have their best interest at

heart. I know there must be a lot of fear associated with me wanting a relationship with them but I'm willing to do what you ask in order to quell any of those fears.

Father understood—and admitted—that he could visit with the Children if he coordinated with the Exchange Club. Therefore, neither Mother nor "circumstances outside his control" prevented Father from visiting with the Children. Based on the foregoing, we conclude that the evidence preponderates against the trial court's finding that Father's failure to visit was not willful. Moreover, we conclude that Mother and Stepfather did establish by clear and convincing evidence that Father willfully failed to visit the Children, and, thus, we reverse the trial court's finding that Father's failure to support was not willful.

Because the record contains clear and convincing evidence that Father was willful in his failure to provide support and failure to visit the Children, grounds for termination exist under Tennessee Code Annotated sections 36–1–1–113(g)(1) and 36–1–102(1)(A)(i). When at least one ground for termination of parental rights has been established, the petitioner must then prove by clear and convincing evidence that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004). Here, because the trial court found that the grounds alleged against Father were not willful, the court's inquiry ended without proceeding to hear evidence concerning whether termination of Father's parental rights was in the Children's best interests. Accordingly, Mother and Stepfather's third and final issue is pretermitted, and this cause is remanded to the trial court for a hearing on whether termination of Father's parental rights is in the Children's best interests. As this Court has previously explained, "when a trial court is directed to reconsider an issue on remand that involves the circumstances of children and their parents, 'the trial court should endeavor to ascertain and give effect to the parties' actual circumstances[.]'" *Kathryne B.F. v. Michael B.*, No. W2013-01757-COA-R3-CV, 2014 WL 992110, at \*7 (Tenn. Ct. App. Mar. 13, 2014) (quoting *In re C.W.*, 420 S.W.3d 13, 22 (Tenn. Ct. App. 2013)). Accordingly, the trial court's best interest determination should consider the circumstances of the parties and the Children as they exist as of the date of the hearing on remand. Lastly, the trial court's decision regarding whether it is in the Children's best interest for Stepfather to adopt the Children must await the court's determination on remand as to whether or not termination of Father's parental rights is in the best interest of the children.

## CONCLUSION

For the foregoing reasons, we reverse and remand the judgment of the trial court for further proceedings consistent with this opinion.

- 10 -

_____

ARNOLD B. GOLDIN, JUDGE